IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD VIERNES,<br>and all others similarly situated,<br><br>                      Plaintiffs,<br><br>     vs.<br><br>DNF ASSOCIATES, LLC,<br><br>                      Defendant.<br>_____ | )  Civil No. 19-00316 JMS-KJM<br>)<br>)  FINDINGS AND RECOMMENDATION<br>)  TO GRANT PLAINTIFF'S MOTION TO<br>)  CERTIFY A CLASS AND APPOINT<br>)  CLASS COUNSEL<br>)<br>)<br>)<br>)<br>)<br>) |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S
MOTION TO CERTIFY A CLASS AND APPOINT CLASS COUNSEL

I.  Introduction

Plaintiff Ronald Viernes ("Plaintiff") moves this Court for an order:  (1)
certifying this action as a class action against Defendant DNF Associates, LLC
("Defendant" or "DNF"); (2) certifying Plaintiff as the representative of the
proposed classes; and (3) appointing Justin A. Brackett and Brian L. Bromberg as
class counsel.  Plaintiff filed his Motion to Certify a Class and Appoint Counsel on
June 30, 2020 ("Motion to Certify").   ECF No. 60.  Defendant filed its Opposition
to the Motion to Certify on July 27, 2020.  ECF No. 68.  Plaintiff filed his Reply
on October 2, 2020.  ECF Nos. 80, 85.  The Court held a telephonic hearing on this
matter on November 3, 2020, at 9:00 a.m.  Justin A. Brackett, Esq., and Brian L.

Bromberg, Esq., appeared on behalf of Plaintiff.  Andrew James Lautenbach, Esq., and Brendan H. Little, Esq., appeared on behalf of Defendant.  Based on the arguments of counsel in their filings and at the hearing, the facts in this action, and the relevant law governing the issues in the Motion to Certify, the Court FINDS AND RECOMMENDS that the district court CERTIFY the class action, APPOINT Plaintiff as class representative, and APPOINT attorneys Justin A. Brackett and Brian L. Bromberg as class counsel.

## II.  The Action

Plaintiff filed his Class Action Complaint on June 19, 2019, alleging violations by Defendant of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"), Hawaii Revised Statues chapter 480 ("UDAP"), and Hawaii Revised Statutes sections 443B-18 to 20—Hawaii's statues related to collection agencies.  *See* ECF No. 1.

A.    Facts Alleged in the Complaint

Defendant is a "debt collector" as defined by the FDCPA.  *Id*. at 1 ¶ 12.  The primary purpose of Defendant's business is the collection of debts.  *Id.* at 4 ¶ 15. Defendant purchases defaulted consumer debts and attempts to collect them by credit reporting and collection lawsuits.  *Id*. at 4 ¶ 15.  Defendant regularly files collection lawsuits against Hawaii consumers.  *Id*. at 5 ¶ 22.  Defendant cannot, however, legally conduct any collection business in the State of Hawaii, including

the collection of debts, because Defendant is not licensed as a debt collector in the State of Hawaii as required under Hawaii state law.  *Id*.

Plaintiff is a "consumer" under the FDCPA.  *Id*. at 3 ¶ 9.  Defendant filed a collection lawsuit in the amount of $1,534.18 against Plaintiff in the Hawaii District Court for the First Circuit on January 10, 2019 ("Viernes Complaint").  *Id*. at 7-8 ¶ 35.  The Viernes Complaint identified Sterling Jewelers, Inc. dba Kay Jewelers as the original creditor, and asserted that Defendant is the successor-in-interest of Kay Jewelers and Plaintiff's account.  *Id*. at 7 ¶¶ 34, 37.  Defendant is attempting to collect a debt Plaintiff incurred from a transaction in which the money, property, insurance, or services were primarily for personal, family or household purposes.  *Id*. at 4 ¶ 14

B.    The Proposed Classes

Plaintiff proposes an "FDCPA Class" and a "Hawaiian Class" in his proposed class action.  *Id*. at 2 ¶ 5.  "The FDCPA Class consists of (i) Hawaii residents; (ii) who have received collection lawsuits, collection letters, or collection calls from DNF Associates; (iii) to collect a 'debt' as defined by the FDCPA; (iv) that DNF Associates bought while in default."  *Id*. at 3 ¶ 10.  "The Hawaiian Class consists of (i) Hawaii 'consumers' as defined by H.R.S. §480-1; (ii) who were subject to collection lawsuits by DNF Associates; (iii) to collect a

'debt' as defined by the H.R.S. § 443B-1;" (iv) that were assigned to DNF.  *Id*. ¶
11.


C.      Counts Alleged in the Complaint

Plaintiff alleges two violations of the FDCPA.  First, Plaintiff alleges that
DNF violated 15 U.S.C. § 1692e by making false and misleading representations
that DNF was "vouched for, bonded by, or affiliated with the United States or any
State, including the use of any badge, uniform, or facsimile thereof."  *Id*. at 8 ¶ 40;
*see* 15 U.S.C. § 1692e (providing that a "debt collector may not use any false,
deceptive, or misleading representation or means in connection with the collection
of any debt" and listing conduct constituting false, deceptive, or misleading
representations).  Plaintiff contends that DNF violated the FDCPA by "attempting
to collect debts in the State of Hawaii without a collection license."  ECF No. 1 at
9 ¶ 41.

Second, Plaintiff alleges that DNF violated 15 U.S.C. § 1692e(2), which
provides that the false representation of "the character, amount, or legal status of
any debt" or "any services rendered or compensation which may be lawfully
received by any debt collector for the collection of a debt" constitutes a violation
of section 1692(e).  *Id*. at 8 ¶ 40.  Plaintiff alleges that DNF made "false, deceptive,
or misleading representations in connection with the legal status of Mr. Viernes's

debt," to the extent DNF demanded payment from Mr. Viernes without the required license to collect that account in Hawaii.  ECF No. 1 at 9 ¶ 43.

Plaintiff also alleges a UDAP violation and a violation of Hawaii Revised Statutes section § 443B-18(5).  *Id*. at 9-11.  First, Plaintiff alleges that DNF violated UDAP because: (1) DNF's collection of this account from Plaintiff, without registering as a Collection Agency with the Department of Commerce and Consumer Affairs and obtaining a license, is an unfair or deceptive act or practice against Plaintiff; and (2) DNF's unlicensed collection activity affords DNF "an unfair competitive advantage and violates Hawaii laws or rules."  ECF No. 1 at 10-11 ¶¶ 53-54.

Second, Plaintiff alleges that DNF violates section 443B-18's mandate that "no collection agency shall use any fraudulent, deceptive, or misleading representation or means to collect, or attempt to collect, claims or to obtain information concerning a debtor or alleged debtor[.]"  Plaintiff contends that under section 443B-18(5), "[a]ny false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding" constitutes a violation of section 443B-18.  ECF No. 1 at 11 ¶ 55.  Plaintiff alleges that DNF wrongfully filed a lawsuit against Mr. Viernes without first acquiring the necessary licensing.  *Id*. at 11 ¶¶ 57-58.  Plaintiff contends that DNF thus made false representations that it can file suit in Hawaii

against Plaintiff and "made a false implication of its ability to collect the debt in a legal proceeding before the courts of the State of Hawaii," thereby violating section 443B-18. *Id.* ¶ 58.

## III. Discussion

Plaintiff moves this Court for class action certification under Federal Rule of Civil Procedure 23 in connection with Defendant's alleged violation of the FDCP and sections 480-2 and 443B-18 of the Hawaii Revised Statutes.

A.    Federal Rule of Civil Procedure 23 - Class Actions

This Court may certify a class only if Plaintiff can demonstrate, "'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (quoting *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (holding that the "plaintiff bears the burden of advancing a prima facie showing that the class action requirements" of Rule 23 are satisfied). Rule 23(a) requires numerosity, common questions of law or fact ("commonality"), typicality, and an adequate representative:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> **(1)** the class is so numerous that joinder of all members is impracticable;
> **(2)** there are questions of law or fact common to the class;
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(**4**) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to analyzing the requirements of Rule 23(a), the Court must also consider whether the matter is suitable for class-wide resolution under Federal Rule of Civil Procedure 23(b).  Fed. R. Civ. P. 23(b) (requiring that a class action meet both the requirements under Federal Rule of Civil Procedure 23(a) and (b)).  Rule 23(b) provides three instances in which a class action is permissible.  *See* Fed. R. Civ. P. 23(b) (listing types of class actions).  Unlike Rule 23(a), which requires all four prerequisites to be met, Plaintiff need only meet one of the conditions provided in Rule 23(b) to satisfy this subsection.

In sum, under Rule 23, a "class action may be maintained if two conditions are met:  The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and an adequate representative), and it also must fit into one of three categories described in subdivision (b)."  *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1028 (9th Cir. 2012) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)).  The Court finds Plaintiff satisfies the foregoing criteria.

B.    Federal Rule of Civil Procedure 23(a) – The Prerequisites

1.    Numerosity

a.  The Threshold Question of the Type of Debt

A recurring theme throughout Defendant's Opposition, and Defendant's main challenge with Plaintiff's assertions on numerosity, is its contention that a "threshold issue in [an] action alleging a violation of the FDCPA or HRS § 443B is whether a defendant collected or attempted to collect a "debt." *See* ECF No. 68 at 10.  Defendant argues:  "Plaintiff has not established how many, if any, of the other lawsuits where DNF is the named plaintiff concern an attempt to collect a debt as defined by the FDCPA or Hawaii law." *Id*. at 13.  The Court addresses Defendant's arguments regarding this "threshold issue" before discussing the substantive features of the numerosity prerequisite.

Defendant insists that merely providing a list from a public record identifying lawsuits is insufficient because this information alone does not identify which lawsuits are subject to the protections afforded by the FDCPA.  *Id.* at 11-12. Defendant specifically takes issue with the list provided by Plaintiff in his Motion to Certify (ECF No. 60-41 at 1-8) and the complaints ("State Complaints") attached to Plaintiff's Reply (ECF Nos. 80-2 and 80-3), arguing that "a review of each and every complaint filed in Hawaii state court would not be determinative of whether DNF sought a judgment concerning a 'debt.'" *Id*. at 12-13.  Defendant argues: "[A]s DNF is a purchaser of debts from original creditors, it would not possess the debtor's knowledge of the purpose of the transaction that created the debts it owns." *Id*. at 13.  The Court disagrees.

The FDCPA prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e.  The FDCPA explicitly defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C.A. § 1692a(5).

Given the FDCPA's limits on the types of debt covered under the act, DNF is entitled to assurance through reasonable proof that only individuals with qualifying debt are confirmed as class members.  Notwithstanding the FDCPA's perspicuity that only consumer debt is covered under the act, as many other courts have determined in considering class certification under the FDCPA, the mere fact that the exact type of debt cannot be isolated "is not enough to thwart class certification."  *See Gold v. Midland Credit Mgmt., Inc*., 306 F.R.D. 623, 629 (N.D. Cal. 2014) ("Plaintiff's suggestion that the name on each debt account can be used to identify whether the financial obligation was incurred by an individual or business is a reasonable one and can be easily applied to whittle down the number of potential class members.").  Acceptance of Defendant's arguments that a factual inquiry must be made into "the purpose and intent" for each underlying debt for the 109 lawsuits identified by Plaintiff before certifying the class, *see* ECF No. 68

9

at 12, "would effectively eliminate class action litigation under the FDCPA because in all cases, separating out the business debt from the consumer debt would pose a bar to class certification."  *Gold*, 306 F.R.D. at 629.

Numerous federal courts throughout the country have rejected arguments like Defendant's and have certified consumer class actions under the FDCPA without conducting the factual inquiry Defendant promotes.  *Id.* (citing *Butto v. Collecto Inc.*, 290 F.R.D. 372, 393 (E.D.N.Y. 2013) (listing cases supporting the proposition that "the need to determine the consumer nature of a debt does not automatically preclude class certification"); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000) (agreeing with "several" federal court decisions that rejected defendant's arguments that class action was not proper because of the difficulties in differentiating consumer and commercial debts); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D. Ill. 1998) ("The need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action.  If that need alone precluded certification, there would be no class actions under the FDCPA.").

Notably, Defendant cites *Lee v. Pep Boys-Manny Moe & Jack of Cali.*, 2015 WL 9480475 (N.D. Cal. 2015) for its argument that further inquiry and evidence must be submitted before certifying the class action.  In *Lee*, the court held that the class failed to meet the numerosity requirement because defendant submitted

testimony that some of the letters that were sent to the class did not concern a transaction primarily for "person, family, or household purposes," but instead, concerned conduct such as theft. ECF No. 68 at 10-11. Defendant's explication of this case does not, however, tell the whole story.

The class action in *Lee* arose out of the attempted collection of monies incurred as a result of the plaintiff's "alleged misuse of his employee discount and for changing the oil on his car while at work" at a defendant's retail auto store. 2015 WL 9480475, at *1. The court's primary concern in *Lee* was not the type of debt at issue; it was whether the debt was a "consensual consumer transaction." The FDCPA does not define "transaction.'" The consensus judicial interpretation of the term, however, "is reflected in the Seventh Circuit's ruling that the statute is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'" *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) (citing *Shorts v. Palmer*, 155 F.R.D. 172, 175-76 (S.D. Ohio 1994) (obligation to pay for shoplifted merchandise not a "debt" under the FDCPA because "plaintiff has never had a contractual arrangement of any kind with any of the defendants."))); *see also Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir.

1994) (obligation to pay child support not a "debt" under the FDCPA because it was not incurred in exchange for consumer goods or services).

The court in *Lee* specifically took issue with the plaintiff's failure to identify evidence establishing that any other class members' financial obligations to the defendant's clients arose out of a "consensual" consumer transaction. The court found persuasive the testimony from the defendant's staff indicating that the letters at issue were sent to persons who stole merchandise, shoplifted, or engaged in other dishonest conduct—*i.e.,* conduct that would not qualify as a "consensual consumer transaction." *Id.* at *6. Accordingly, although the type of the debt was an issue, the salient issue was whether the debt arose from a consensual transaction.

Defendant has not offered the type of evidence the defendants in *Lee* were able to offer, to wit, every demand letter in *Lee* mentioned theft. *Id.* There is no evidence in this case that the State Complaints are related to anything other than a consensual consumer transaction involving consumer goods. The only substantiation Defendant provides for its argument that some of the State Complaints may not be for consumer debt is the fact that four of the over one hundred lawsuits identified by Plaintiff in Exhibit A of his Motion to Certify have more than one defendant listed. ECF No. 68 at 12. Defendant's arguments are unavailing.

Defendant admits that it is a purchaser of debts from original creditors.  *Id*. at 13.  Defendant also claims to be the successor in interest to Kay Jewelers, a widely known jewelry chain that sells jewelry to consumers.  A majority of the State Complaints provide that the filings are an attempt to collect a debt related to Kay Jewelers.

Defendant expostulates on the propriety of using the State Complaints as determinative that the judgment sought therein are for "debts" within the meaning of the FDCPA.  The Court cannot conceive, however, nor does the Defendant assist the Court in this regard, of a type of transaction other than a "consensual consumer transaction" from which these debts could have arisen.  Even if this Court were to accept Defendant's argument at the hearing that some of the underlying transactions could have been purchased by a consumer for commercial purposes, common sense dictates that such a transaction would be an anomaly rather than the norm given the parties and facts in this case.

Plaintiff on the other hand, makes a satisfactory showing for this Court, using common sense and making reasonable inferences, to find that this action involves the type of "debt" contemplated by the FDCPA.  *See Barrack*, 524 F.2d at 901 ("So long as [the court] has sufficient material before [the court] to determine the nature of the allegations, and rule on compliance with [Rule 23's] requirements, and [the court] bases [its] ruling on that material, [the court's]

13

approach cannot be faulted because plaintiffs' proof may fail at trial."); *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-CV-0224-YGR, 2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016) (stating that a court may make common-sense assumptions and reasonable inferences in analyzing numerosity).

The Court finds that Plaintiff provides sufficient facts for this Court to infer that Defendant sought to collect debt incurred primarily for personal, household, and family purposes from the individuals listed in the State Court Complaints. *See Gold*, 306 F.R.D. at 630 (finding Plaintiff had demonstrated through her own declaration and deposition testimony that her debt was incurred on a credit card that she primarily used to purchase personal and household goods and services and thus sufficient to infer that at least some of the other debts from the proposed class were for the same purposes). Accordingly, the Court finds that these complaints may be used to analyze the numerosity prerequisite. Further particularized inquiry into each debt is not necessary at this stage of litigation.

b.    Impracticability of Joinder

Rule 23(a)(1) requires that a class in an action be so numerous "that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). As used in the numerosity requirement of Rule 23, impracticability, "does not mean 'impossibility,' but only 'the difficulty or inconvenience of joining all members of the class.'" *R.P.-K. ex rel. C.K. v. Dep't of Educ., Haw.,* 272 F.R.D. 541, 547 (D.

Haw. 2011) (quoting *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 914

(9th Cir.1964)).  "Plaintiffs are not required to establish the precise number of class

members, as long as common sense and reasonable inferences from the available

facts show that the numerosity requirement is met."  *Nghiem v. Dick's Sporting*

*Goods, Inc*., 318 F.R.D. 375, 380 (C.D. Cal. 2016) (internal quotations and citation

omitted); *R.P.-K. ex rel. C.K.*, 272 F.R.D. at 547 ("'When the exact number of

class members cannot be ascertained, the court may make common sense

assumptions to support a finding of numerosity.'") (quoting *Susan J. v. Riley*, 254

F.R.D. 439, 458 (M.D. Ala. 2008)).

　　　Plaintiff asserts that, based on a search of Hawaii state court records by

Plaintiff's counsel, "approximately 109 individuals qualify for the FDCPA class

and for the Hawaii class."  ECF No. 60 at 12; *see also* ECF No. 60-4 (Declaration

of Justin A. Brackett In Support of Class Certification ("Brackett Decl.") at 2 ¶ 8.

The Court finds this number sufficient to meet the numerosity requirement.

　　　"The numerosity requirement is not tied to any fixed numerical threshold."

*R.P.-K. ex rel. C.K.*, 272 F.R.D. at 547.  The Ninth Circuit has indicated that it

would be inclined to find the numerosity requirement in classes smaller than

Plaintiff's proposed class.  *See Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 (9th Cir.

1982) ("[W]e would be inclined to find the numerosity requirement in the present

case satisfied solely on the basis of the number of ascertained class members, *i.e.*,

39, 64, and 71[.]"), *cert. granted, judgment vacated sub nom. on other grounds*,

*Cty. of L.A. v. Jordan*, 459 U.S. 810 (1982) (vacating *L.A. Cty.*, 669 F.2d 1311, in

light of *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982); *see also R.P.-K. ex*

*rel. C.K.*, 272 F.R.D. at 547 ("Generally . . . a class that is likely to exceed forty

members satisfies numerosity.") (citing *Amone v. Aveiro,* 226 F.R.D. 677, 684 (D.

Haw. 2005) ("[I]n light of prevailing precedent, the difficulty inherent in joining as

few as 40 class members should raise a presumption that joinder is impracticable,

and the plaintiff whose class is that large or larger should meet the test of Rule

23(a)(1) on that fact alone.") (quoting Newberg and Conte, 1 Newberg on Class

Actions § 3.6 (4th ed. 2002))).

      Defendant argues that Plaintiff failed to submit sufficient evidence that the

proposed class is, in fact, numerous. *See* ECF No. 68 at 8-9. Defendant contends

that Plaintiff's assertions of the number of possible plaintiffs is speculative and

unsupported by any evidence in the record. *Id*. at 12. In support of Defendant's

arguments that Plaintiff's lack of evidence is fatal to his motion, Defendant relies

on *Diacakis v. Comcast Corp*., No. C 11-3002 SBA, 2013 WL 1878921 (N.D. Cal.

May 3, 2013) and *Uschold v. Carriage Servs., Inc.,* No. 17-CV-04424-JSW, 2020

WL 1466172 (N.D. Cal. Mar. 6, 2020). The Court is not persuaded.

      In *Diacakis*, the plaintiffs pointed only to the fact that there were 649,576

subscribers to a cable package offered by a cable company, Comcast. *Diacakis v.*

16

*Comcast Corp.*, No. C 11-3002 SBA, 2013 WL 1878921, at *5 (N.D. Cal. May 3, 2013).  The court found that this alone was insufficient because the plaintiff failed to offer any evidence "regarding the number of those subscribers who were allegedly misled by Comcast into believing there would be no modem-related fees if they signed up for a particular cable package.  *Id*.  In *Uschold*, the only information the plaintiffs presented were excerpts from a single person's testimony to support the plaintiffs' contention that the proposed class was comprised of at least 600 people.  2020 WL 1466172, *11.

In this case, Plaintiff alleged in his Complaint that DNF, as successor in interest to Kay Jewelers, filed a lawsuit against Plaintiff for an alleged debt he owed to Kay Jewelers.  ECF No. 14 at 8 ¶ 37.  Plaintiff also stated in his declaration that the credit card debt that was placed in default was incurred primarily for personal, household, and family purposes.  ECF No. 60-6 at 2.  Plaintiff also attached with his reply, 22 complaints Defendant had produced of debt collection lawsuits Defendant had filed in Hawaii state court and 62 other complaints Plaintiff obtained while awaiting Defendant's full production of other complaints.  *See* ECF No. 80 at 7 n.6; ECF No. 80-2 to 80-3.  The State Complaints are almost identical to the Viernes Complaint save for the debt alleged.

This Court's task on a motion for class certification is not to consider the merits of Plaintiff's claims; rather, the Court is bound to take non-conclusory, non-

generic, substantive allegations as true.  *Burkhalter Travel Agency v. MacFarms Int'l, Inc*., 141 F.R.D. 144, 152 (N.D. Cal. 1991) (citing *In re Unioil Secs. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985), *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975), and *Morrison v. Booth*, 763 F.2d 1366 (11th Cir. 1985)).  Given Federal Rule of Civil Procedure 23(c)'s mandate for this Court to determine as soon as practicable whether to certify an action as a class action, the "judge is necessarily bound to some degree of speculation by the uncertain state of the record on which he [or she] must rule."  *Barrack*, 524 F.2d at 901; *see also* Fed. R. Civ. P. 23(c) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").  Based on Plaintiff's allegations, the number of complaints filed by Defendant, and the reasonable inferences that can be made from these complaints, the Court finds that Plaintiff sufficiently demonstrates that numerosity is met.

      2.    Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that the proposed class action has "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule."  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011) (internal quotations and brackets omitted).

18

Plaintiff contends that this "case presents the common question of whether Defendant's debt collection activities while unlicensed violated the FDCPA and Hawaii law." ECF No. 60 at 13. Plaintiff argues the answer to this question will be the same for all class members. *Id*. In addition, Plaintiff contends that this case "also presents common facts, because the Defendant has admitted that it is not licensed as a debt collector and Defendant cannot dispute that it has brought collection actions against class members in Hawaii." *Id*. The Court agrees.

Although it is insufficient to merely allege any common questions, the crucial question—whether Defendant's unlicensed debt collection activities in Hawaii violated the FDCPA, UDAP, and section 443B-18—is common to each of the proposed class members. The answer to this question has the capacity to generate "common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)).

Plaintiff's Complaint sets forth more than one issue that is common to the class. Most of the prospective class members' claims involve Defendant's efforts to collect debt incurred by the class members at Kay Jewelers or a similar business.

*See* ECF No. 80-3.  These common core questions are sufficient to satisfy the commonality test.  *See Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990) (holding that Rule 23 does not "require the named plaintiffs to be identically situated with all other class members"; rather, it "is enough if their situations share a 'common issue of law or fact' . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'") (quoting *Barrack*, 524 F.2d at 904; *Sullivan v. Chase Inv. Serv. of Boston*, 79 F.R.D. 246, 257 (N.D. Cal. 1978)); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  The Court finds Plaintiff meets commonality pursuant to Rule 23(a)(2).

      3.    Typicality

Rule 23(a)(3), the typicality prerequisite, requires the claims of the representative party to be typical of the proposed class claims.  *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020); Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508.  "The typicality inquiry focuses on 'the nature of the claim . . . of the class

representative, and not . . . the specific facts from which it arose." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020).  "Rule 23(a)(3) is 'permissive' and requires nothing more than that a class plaintiff's claims be 'reasonably coextensive with those of absent class members.'" *Gonzales*, 975 F.3d at 809.

Plaintiff argues that typicality is satisfied because the claims of the proposed class representative are based on the same allegedly unlawful conduct underlying the claims of the proposed class members, *i.e.*, DNF filed a debt collection lawsuit against the proposed class without a license in violation of federal and state law. ECF No. 60 at 14.  The Court agrees.  *See Hanon*, 976 F.2d at 508 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (internal quotations omitted).

In addition, the Court cannot find anything unique about Plaintiff's alleged injury or DNF's alleged injury-causing conduct which would preclude this Court's finding that Plaintiff satisfied the typicality requirement.  *See id.* ("[A] named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with

defenses unique to it.") (internal quotations omitted).  Plaintiff satisfies the typicality requirement.

    4.    Adequate Representative

Federal Rule of Civil Procedure 23(a)(4) requires that the named plaintiff in a proposed class action fairly and adequately protect the interests of the class to qualify for class action certification.  *Ellis*, 657 F.3d at 985.  The Court must resolve two questions to determine whether named plaintiffs will adequately represent a class: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id*. (quoting *Chrysler Corp*., 150 F.3d at 1020).  The Court finds that Plaintiff is an adequate representative in this proposed class action.

"The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements" of his claim.  *Moeller v. Taco Bell Corp*., 220 F.R.D. 604, 611 (N.D. Cal. 2004).  "It is not necessary that a representative 'be intimately familiar with every factual and legal issue in the case;' rather, it is enough that the representative understand the gravamen of the claim."  *Id*. (quoting *In re Worlds of Wonder Sec. Litig.*, No. C 87 5491 SC, 1990 WL 61951, at *3 (N.D. Cal. Mar. 23, 1990)).  Courts have found representatives inadequate where the proposed plaintiff was "startlingly unfamiliar" with his or her

case, *e.g*., the plaintiff knew nothing about the case and completely relied on

counsel to direct the litigation. *Id.* (listing cases in which the court found the

plaintiff to be inadequate); *Lee*, 2015 WL 9480475, at \*10 (finding the named

plaintiff inadequate because he did not know who decided to sue whom, had never

read the complaint, was unaware that his attorneys were seeking fees from

defendants, was unable to identify any defendant at his first deposition, did not

know mediation had ever occurred, and believed the next thing that would happen

in the case was that he and his class would receive money). Such is not the case

here.

Defendant makes much ado about Plaintiff's confusion about certain events

in the course of this litigation; however, none of Defendant's arguments about

Plaintiff's unfamiliarity with his claim are convincing. *See* ECF 68 at 16 (taking

issue with Plaintiff's unfamiliarity with procedural, not factual, aspects of the

proposed class action). "The class action procedure exists, in part, for the benefit

of plaintiffs with small claims who could not otherwise vindicate their rights."

*Kaplan v. Pomerantz*, 131 F.R.D. 118, 122 (N.D. Ill. 1990). Requiring a plaintiff

to understand the nuances of debt collection ownership or to understand every

procedural aspect of a class action "would convert the class action into a device

usable only by individuals with such a degree of sophistication that they would be

capable of acting as their own attorneys." *Id*.; *see also Lee*, 2015 WL 9480475, at

*10 ("[I]n the FDCPA context, courts have allowed a class representative to proceed even where she could not recall the exact nature of her debts, . . . and where he was unable to identify all defendants").

The Court agrees with Plaintiff that "the legal claim at the center of this lawsuit is, at its core, a simple one." ECF No. 80 at 12. Plaintiff demonstrated his understanding of this claim when he explained in his deposition: "DNF sued me for monies owed to collect a debt, and they're not a registered business to collect debts in Hawaii. And they did that to 109 other Hawaiian residents residing in Hawaii, the same thing." ECF 60-3. In addition, Plaintiff's counsel have demonstrated their knowledge and familiarity with this case in their filings and thus, their ability to vigorously prosecute this action on behalf of the class.

The Court cannot find any conflicts of interests that Plaintiff and his counsel may have with other class members. Nor does Defendant allege any. The Court thus finds that Plaintiff and his counsel will fairly and adequately protect the interests of the proposed class. Accordingly, the proposed class action meets the adequacy requirement of Rule 23(a)(4).

C.    Federal Rule of Civil Procedure 23(b) – Types of Class Actions

"In addition to meeting the requirements of Rule 23(a), Plaintiff must also satisfy 'through evidentiary proof' one of the three subsections of Rule 23(b). *Gold,* 306 F.R.D. at 632. In this case, Plaintiff contends that the proposed action

satisfies Rule 23(b)(3).  "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Advisory Committee's 1996 Notes on Fed. Rule Civ. Proc. 23(b)(3); *see Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("Framed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.'") (quoting Advisory Committee's 1996 Notes on Fed. Rule Civ. Proc. 23(b)(3)).

Rule 23(b)(3) is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) (holding that Rule 23(b)(3) "requires the judge to make findings about predominance and superiority before allowing the class.").

1.  Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Windsor*, 521 U.S. at 623.

The Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members."  *Id*.  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996).

Plaintiff contends that the common question in this action is "whether Defendant's practice of engaging in debt-collection activities without a license violated the FDCPA or Hawaii law."  ECF No. 60 at 17.  Plaintiff argues that because "the class is limited to debt collections that are similar or identical to the debt-collection action pursued against Plaintiff," the Court need only decide liability using one set of facts.  *Id*.

Defendant's primary argument against Plaintiff's ability to meet the predominance test is that, because "individual questions exist as to whether putative class members indebtedness qualify as 'debts' as defined by the FDCPA," this Court cannot determine "questions of law or fact common to class members predominate" over any questions affecting only individual members.  This Court rejects this argument for the same reasons the Court rejected this argument in the numerosity section above.

"Determining the nature of each class member's debt will be necessary at some stage of litigation[,] but is not inherently a barrier to class certification."

*Norton v. LVNV Funding*, LLC, No. 18-CV-05051-DMR, 2020 WL 5910077, at

\*11 (N.D. Cal. Oct. 6, 2020).  As other courts have recognized, this "debt" dispute

will inevitably arise in almost any FDCPA class action, "so denying class

certification on this basis alone would eliminate or severely impair the ability to

challenge unfair debt collection practices on a classwide basis."  *Id.*

The Court finds that this case invokes common questions of law and fact

about whether Defendant violated the FDCPA and Hawaii state law by engaging in

debt-collection activities without complying with Hawaii's law.  This commonality

is the most significant aspect of this case and thus predominates over any questions

affecting only individual class members, *i.e.*, the question of what type of debt

each individual class member incurred.  *See Villanueva v. Liberty Acquisitions*

*Servicing, LLC*, 319 F.R.D. 307, 333–34 (D. Or. 2017) (finding predominance met

because resolution of the claim would require common proof and common

answers, to wit, common proof would be used to assess whether the defendant's

conduct violated the FDCPA); *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505,

514 (N.D. Cal. 2007), *aff'd sub nom. Hunt v. Imperial Merch. Servs.*, Inc., 560 F.3d

1137 (9th Cir. 2009) (finding predominance met because the "primary and

predominating question" in the case was whether defendant's conduct "was

contrary to California law and therefore in violation of the FDCPA."); *Santoro v.*

*Aargon Agency, Inc.*, 252 F.R.D. 675, 684 (D. Nev. 2008) (finding predominance

where members of the putative class were linked by a significant operative fact (having been sent a collection letter) and a primary legal issue arising therefrom (whether the letter violated the FDCPA and related Nevada law)).

2.  Superiority

The superiority test of Rule 23(b)(3) requires the Court to find that a class action is superior to other methods of adjudication.  *Valentino*, 97 F.3d at 1234. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  *Id*.  Generally, the non-exhaustive matters pertinent to a superiority finding include consideration of the class members' interests, the litigation, and the management of the class action:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Wolin*, 617 F.3d at 1175.

As an initial matter, the Court notes that the FDCPA specifically provides for and contemplates class action relief.  15 U.S.C. §§ 1692k(a)(2)(B), (b)(2). "Courts have found that individual consumers are most likely unaware of their rights under the FDCPA" and that "class action certifications to enforce

28

compliance with consumer protection laws are 'desirable and should be encouraged.'" *Hunt*, 214 F.R.D. at 514 (quoting *Ballard v. Equifax Check Services, Inc*., 186 F.R.D. 589, 600 (E.D. Cal. 1999)).

The Court finds that a class action in this context is superior to individual claims. As elucidated by the court in *Hunt*, class actions are superior to individual claims in these cases for the following reasons: (1) individual consumers are most likely unaware of their rights under the FDCPA; (2) "the drafters of the FDCPA contemplated class action recovery within the liability portion of the act"; (3) "the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually"; and (4) "while valid concerns regarding the manageability of the class exist in relation to liability, they are not sufficient to defeat certification." *Hunt*, 241 F.R.D. at 514-15. Moreover, class action certifications "to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Ballard*, 186 F.R.D. at 600 (quoting *Duran v. Credit Bureau of Yuma, Inc*., 93 F.R.D. 607, 610 (D. Ariz. 1982) (citing *Watkins v. Simmons and Clark, Inc*., 618 F.2d 398, 404 (6th Cir. 1980)). Accordingly, this action satisfies the superiority inquiry of Rule 23(b)(3).

D.    Class Counsel

The Court has considered counsel's work in this action, experience in handling class actions, knowledge of the law governing this action, and resources.

Indeed, Federal Rule of Civil Procedure 23(g) requires this Court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class[.]

Based on the foregoing considerations and the considerations discussed in this order analyzing Rule 23(a)(4)—whether the representative parties will fairly and adequately protect the interests of the class—the Court finds that Justin A. Brackett, Esq., and Brian L. Bromberg, Esq., have sufficiently demonstrated their ability to represent the proposed classes.

## CONCLUSION

The Court finds that Plaintiff meets the prerequisite requirements of Rule 23(a), the requirements of a Rule 23(b) class action, and the requirements of counsel as provided in Rule 23(g).  Accordingly, the Court makes the following recommendations:

(1) The Court recommends that the district court GRANT Plaintiff's Motion to Certify as to Plaintiff's proposed FDCPA Class and Hawaii Class, which the Court recommends the district court define as follows:

FDCPA Class

> (a) all Hawaii residents;
> (b) who were subjected to debt collection lawsuits by DNF;
> (c) while DNF was unlicensed as a debt collector in Hawaii;

(d) to collect a "debt" as defined by the FDCPA;

(e) that DNF bought while the debt was in default; and

(f) where the collection lawsuit, letters, or calls occurred within the one (1) year period immediately preceding the filing of this complaint.

Hawaii Class

(a) all Hawaii "consumers" as defined by H.R.S. § 480-1;

(b) who were subjected to debt collection lawsuits by DNF;

(c) while DNF was unlicensed as a debt collector in Hawaii;

(d) to collect a "debt" as defined by H.R.S. § 443B-1;

(e) where DNF was assigned the debt; and

(f) where the collection lawsuit commenced within the four (4) year period immediately preceding the filing of this complaint.

*See* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).");

(2) The Court recommends that the district court appoint Ronald Viernes as class representative to proceed on behalf of the foregoing classes for Defendant's alleged violations of the FDCPA, UDAP, and Hawaii's law governing collection agencies, *i.e.*, Hawaii Revised Statutes §§ 480-1 and 443B-1; and

(3) The Court recommends that the district court appoint Justin A. Brackett, Esq., and Brian L. Bromberg, Esq., as class counsel under Federal Rule of Civil Procedure 23(g).

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaiʻi, November 23, 2020.



Kenneth J. Mansfield
United States Magistrate Judge

CV19-316 JMS-KJM; Viernes v. DNF Associates; FINDINGS AND
RECOMMENDATION TO GRANT PLAINTIFF'S MOTION TO CERTIFY A
CLASS AND APPOINT CLASS COUNSEL