IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RONALD VIERNES,
and all others similarly situated,

Plaintiffs,

vs.

DNF ASSOCIATES, LLC,

Defendant.

CIV. NO. 19-00316 JMS-KJM

ORDER DENYING DEFENDANT'S "MOTION TO DISMISS FOR LACK OF STANDING AND TO DECERTIFY THE CLASSES," ECF NO. 124

## ORDER DENYING DEFENDANT'S "MOTION TO DISMISS FOR LACK OF STANDING AND TO DECERTIFY THE CLASSES," ECF NO. 124

## I. INTRODUCTION

Before the court is Defendant DNF Associates, LLC's ("DNF") "Motion to Dismiss for Lack of Standing and to Decertify the Classes," ECF No. 124 ("Motion").  In its Motion, DNF makes three principal arguments: (1) claims asserted by Plaintiff Ronald Viernes ("Viernes") should be dismissed because Viernes has not suffered an injury in fact sufficient to confer standing under Article III of the Constitution; (2) claims asserted on behalf of Plaintiff Class Members, *see* ECF No. 92, should also be dismissed because there is no allegation supporting the conclusion that the Class Members suffered injuries in fact; and (3) even if the Plaintiff Class Members could have suffered injuries in fact, the classes should be

decertified because determining whether each Class Member has suffered such an injury undermines the class vehicle.  *See* ECF No. 124-1.  For the reasons provided below, the Motion is DENIED in full.

## II.  **BACKGROUND**

### A.  **Factual Background**

This case concerns an attempt by DNF to collect a debt from Plaintiff Viernes, which Viernes now admits was originally owed to third-party Kay Jewelers and was subsequently purchased by DNF.  *See* ECF No. 63-8 at PageID # 417, ¶ 5; ECF No. 68-3 at PageID # 515, ll. 23–25.  Despite now admitting the debt, Viernes previously disputed the debt, *see, e.g.*, ECF No. 1 at PageID # 11, ¶ 56, including by "sending [two] dispute letters to DNF and its attorney" on March 8, 2019, which sought verification of facts supporting the attempt to collect the debt.  *See* ECF No. 124-3 at PageID ## 1620, 1624–25.  Sending those two dispute letters cost Viernes $13.70.  *See* ECF No. 124-4 at PageID ## 1643–52 (copies of the two dispute letters and related postage receipts, each bearing a price of $6.85).

Viernes sent those dispute letters in response to the collection lawsuit that DNF—which was not properly registered in Hawaii—filed against Viernes in the State of Hawaii District Court of the First Circuit, Honolulu Division.  *See* ECF No. 1 at PageID ## 7–8; *see also* ECF No. 60-3 at PageID ## 302–04 (complaint in

DNF's collection lawsuit).  DNF also sent Viernes a debt-settlement letter dated March 5, 2019, i.e., three days before the date listed on Viernes's dispute letters, but it is unclear whether Viernes sent his dispute letters before or after receiving DNF's demand letter.  *See* ECF No. 132-2; ECF No. 124-3 at PageID # 1618. Regardless, the dispute letters are a direct response to the collection lawsuit, as both letters list the docket number for the collection lawsuit in their introductory paragraphs.  *See* ECF No. 124-4 at PageID ## 1643, 1648.  Viernes alleges that, as a result of DNF's attempt to collect the debt, he suffered harm in the form of postage costs and "additional damages" incurred in responding to the collection lawsuit, including emotional distress.  ECF No. 1 at PageID # 8.

## B.     Procedural Background

Viernes filed his Complaint in this case on June 19, 2019, asserting the facts described above.  *See* ECF No. 1.  As for legal theories, the Complaint asserts that DNF was unlawfully attempting to collect Viernes's jewelry debt because DNF had not registered as a debt-collection agency in the State of Hawaii. *Id.* at PageID ## 10–11.  Specifically, the Complaint alleges that Viernes was a "debtor" and that DNF was attempting to collect a "debt," as those terms are defined in Hawaii Revised Statutes ("HRS") § 443B-1, making DNF a "collection agency" under that statute and thus in violation of HRS § 443B-3, which specifies that "[n]o collection agency shall collect or attempt to collect any money or any

other forms of indebtedness . . . in this State without first registering under this chapter."  ECF No. 1 at PageID ## 3–5.  DNF does not dispute that it is not registered in the State of Hawaii.  *See* ECF No. 63-2 at PageID # 361, ¶ 6.

The alleged violation of HRS § 443B-3 is a predicate fact supporting Viernes's ultimate legal claims:  The first claim is that DNF violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), by filing a lawsuit seeking to collect a debt that DNF had no legal authority to collect.  ECF No. 1 at PageID ## 8–9.  More specifically, DNF violated 15 U.S.C. § 1692e because filing the collection lawsuit constitutes a false, deceptive, or misleading representation regarding DNF's ability to lawfully collect debts in the State of Hawaii.  ECF No. 1 at PageID ## 8–9.

The second claim is that DNF violated Hawaii's statute prohibiting unfair or deceptive acts or practices when conducting trade or commerce ("UDAP"), also by filing a lawsuit seeking to collect a debt that DNF had no legal authority to collect.  *Id.* at PageID ## 9–11.  More specifically, DNF committed an "unfair or deceptive act or practice against [Viernes]," in violation of HRS § 480-2(a), when it attempted to collect a debt while unregistered; attempting to collect while unregistered also gave DNF an "unfair competitive advantage," in violation of § 480-2(a).  ECF No. 1 at PageID ## 10–11.

And the third claim is that DNF violated Hawaii's more specific collection-agency statute, HRS § 443B-18(5). DNF violated that statute, according to the Complaint, because DNF's filing a lawsuit as an unregistered collector constitutes a "false implication of [DNF's] ability to collect the debt in a legal proceeding before the courts of the State of Hawaii." ECF No. 1 at PageID # 11.

The Complaint is also a Class Action Complaint filed on behalf of an "FDCPA Class" and a "Hawaii Class." *See id.* at PageID ## 3, 5–7; ECF No. 95 at PageID # 1333 (order adopting findings and recommendation to grant Viernes's class-certification motion). The FDCPA Class consists of Hawaii residents subjected to debt-collection lawsuits filed by DNF within a year preceding the filing of the Complaint. ECF No. 95 at PageID # 1333. The Hawaii Class consists of Hawaii "consumers," as defined in HRS § 480-1, subjected to debt-collection lawsuits filed by DNF within four years preceding the filing of the Complaint. *Id.*

The Complaint alleges the same facts described above on behalf of the Class Members, the notable exception being the differences in the allegations of harm. The Complaint asserts that Viernes incurred postage costs, mileages costs, and emotional distress in responding to DNF's collection lawsuit—but the Complaint does not assert similarly specific harms on behalf of the Class Members. *See* ECF No. 1 at PageID ## 5–11. Instead, the Complaint asserts the same legal claims on behalf of the Class Members as it does for Viernes, *see id.*,

and it requests overlapping relief on behalf of the Class Members and Viernes: "[t]hat Plaintiff and the FDCPA [C]lass be awarded statutory damages pursuant to 15 U.S.C. § 1692k(a)"; "[t]hat Plaintiff and the Hawaii[] Class be awarded statutory damages . . . pursuant to [HRS] § 480-13"; and "[i]njunctive relief ordering [DNF] to cease and desist from collecting debts in the State of Hawaii unless, and until, they have registered . . . as a debt collector." ECF No. 1 at PageID ## 12–13.  Despite the Complaint not alleging specific harms on behalf of the Class Members, the claims asserted and relief requested by that Complaint— particularly, that any "damage sustained" by the Class Members from DNF's lawsuit be remedied, *see* 15 U.S.C. § 1692k(a) and HRS § 480-13(b)— imply that the Class Members were harmed by DNF's collection lawsuits against them.

DNF filed its Motion on October 28, 2021, seeking to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) based on a lack of constitutional standing, and seeking to decertify the classes given the requirements of Federal Rule of Civil Procedure 23.  *See* ECF Nos. 124, 124-1.  Viernes filed an Opposition on behalf of the Class Members and himself on November 30, 2021. ECF No. 129.  In that Opposition, Viernes no longer asserts that he incurred "mileages costs" in responding to DNF's lawsuit.  *See id.* (not mentioning or providing evidence demonstrating mileage costs).  DNF filed a Reply on December 8, 2021.  ECF No. 130.  The court held a hearing on the Motion on

December 22, 2021.  ECF No. 131.  At that hearing, Viernes's counsel represented that Viernes was no longer seeking to recover damages for the alleged emotional distress, but that he was still asserting that alleged distress in his effort to show an injury in fact.  On January 4, 2022, the parties filed a Joint Declaration clarifying the timeline of events following the collection lawsuit.  *See* ECF No. 132.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction, including claims for which a plaintiff lacks standing.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways—a "facial" or "factual" challenge.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A "facial" challenge accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction."  *Id.*  The district court resolves a facial challenge as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

A "factual" challenge "'relie[s] on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on the basis of the pleadings.'" *Safe Air*, 373 F.3d at 1039 (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003)). "[T]he district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Regardless of the type of motion asserted under Rule 12(b)(1), the plaintiff always bears the burden of showing that federal jurisdiction is proper. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

A court may consider a motion to decertify a class at any time. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809–10 (9th Cir. 2010). In considering a decertification motion, the court applies the same standard applied at class certification: whether the requirements of Federal Rule of Civil Procedure 23 have been met. *See id.* The party seeking decertification bears the burden of proof. *See Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

## IV. <u>ANALYSIS</u>

DNF asserts that Viernes and the Class Members lack standing. DNF mounts a factual challenge to Viernes's standing, arguing that "the record is devoid of evidence sufficient to demonstrate Plaintiff suffered a concrete injury traceable

to DNF's failure to obtain a license."  ECF No. 124-1 at PageID # 1595.  And DNF

mounts a facial challenge to the Class Members' standing, arguing that "being

subject[ed] to a lawsuit where there is a procedural error" "cannot serve as a basis

to establish standing on a class wide basis."  ECF No. 130 at PageID # 1725.  DNF

also argues that, even if some of the Class Members might have suffered tangible

harm, "[e]ach class member's injury cannot be determined through common

evidence and, in accordance with *TransUnion*[ *LLC v. Ramirez*, 141 S. Ct. 2190

(2021)], the Classes should be decertified."  ECF No. 124-1 at PageID # 1611.

        DNF's challenges to standing fail for the same reason:  Viernes and

the Class Members suffered an injury in fact—and thus have standing to sue

DNF—because they were subjected to lawsuits that DNF was prohibited from

bringing under Hawaii law.  Further, Viernes suffered tangible harm by having to

pay postage costs in response to the unlawful lawsuit; that harm is an additional

injury in fact traceable to DNF's conduct and supporting Viernes's standing.

DNF's decertification argument also falls flat, because the individualized nature of

damages among the Class Members does not preclude class certification.

## A.    Standing Law

        Under the United States Constitution, federal courts' judicial power is

limited to "Cases" or "Controversies."  U.S. Const. art. III, § 2.  That limitation

requires a plaintiff to demonstrate the "irreducible constitutional minimum of

standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61).

The first element of the standing—whether plaintiff suffered an "injury in fact"—requires an injury that is "concrete." *Id.* at 339. A "concrete" injury is "real, and not abstract," but can include intangible harms as well as tangible harms. *Id.* at 340 (internal quotation marks omitted). Obvious examples of tangible harms include "physical harms and monetary harms"; "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion*, 141 S. Ct. at 2204.

"Various intangible harms can also be concrete." *Id.* Examples include the "disclosure of private information," the "abridgment of free speech," and "reputational harms." *Id.* But some intangible harms are too abstract to constitute an injury in fact. Examples include a doctor's interest in maintaining the "standards of medical practice" with respect to abortions, *Diamond v. Charles*, 476 U.S. 54, 66–67 (1986), and consumers' disturbance from having to purchase "foreign goods produced by forced labor," *McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1552–53 (Fed. Cir. 1986).

Although the line between concrete intangible harms and abstract intangible harms can be difficult to discern, the Supreme Court has provided an "instructive" test that "consider[s] whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341; *see also TransUnion*, 141 S. Ct. at 2204, 2207 (stating the same test and noting that "the concrete-harm requirement can be difficult to apply in some cases").

That test is especially relevant when the alleged intangible harm is entwined with the defendant's statutory violation, because "[the Supreme] Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* And "concrete harm" can be identified by asking whether the alleged harm flowing from the statutory violation bears a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts. *See id.* at 2208–14 (analogizing the dissemination of misleading credit reports with the harms associated with common-law defamation).

11

The second element of standing—whether the injury is "fairly traceable" to the challenged conduct—is often called the "causation" requirement. *See* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.5 (3d ed. 1998, Apr. 2021 update). The burden for sufficiently pleading causation as an element of standing "is relatively modest." *Bennett v. Spear*, 520 U.S. 154, 168–71 (1997). It is not equivalent to proving proximate cause. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Nor is it equivalent to proving strict but-for causation. *See Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 195 (3d Cir. 2004) ("Article III standing demands 'a causal relationship,' but neither the Supreme Court nor our Court has ever held that but-for causation is always needed.").[1] The central inquiry is whether there is "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. "[T]he line of causation between the illegal conduct and injury [cannot be] too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark*, 572 U.S. 118; *see also Lujan*, 504 U.S. at 560–61 ("[T]he injury has to be 'fairly traceable to the challenged action of the defendant,

---

[1] *See also Save Our Heritage, Inc. v. F.A.A.*, 269 F.3d 49, 56 (1st Cir. 2001) ("Petitioners asserting standing are not required to negate every possibility that the outcome might be the same under highly unusual circumstances."); *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1179 (9th Cir. 2000) ("A plaintiff need not establish with absolute certainty that adherence to the required procedures would necessarily change the agency's ultimate decision. . . . If the current exchange is not based on [the proper procedures], it must be set aside. What the parties do after that is up to them, and is not before us." (citation omitted)).

and not the result of the independent action of some third party not before the court.'" (alterations and ellipses omitted) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976))).

The third element of standing asks whether the injuries are likely to be redressed by a favorable judicial decision. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). Plaintiffs need not show that redressability is guaranteed; rather, they must show there will be a "change in a legal status" that will "amount to a significant increase in the likelihood that [they] would obtain relief that directly redresses the injur[ies] suffered." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012). As a general rule, compensatory damages satisfy the redressability requirement for purposes of standing. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012); *see also Uzuegbunam*, 141 S. Ct. at 800–02 (explaining that both nominal and compensatory damages can independently satisfy the redressability requirement for standing).

All elements of standing, including the injury-in-fact requirement, must be satisfied for each of a plaintiff's claims and forms of requested relief. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Although in certain cases only one plaintiff needs standing to sue, *see, e.g.*, *Bowsher v. Synar*, 478 U.S. 714, 721 (1986), in a class action for damages, "[e]very class member must have Article III standing,"

*TransUnion*, 141 S. Ct. at 2208.  The requirement that every class member have suffered an injury in fact does not, however, require the class representative to prove—nor the court to analyze—whether each individual class member incurred actual damage.  *See id.* at 2208–09 (holding that the more general harm of having misleading information disseminated to third parties was sufficient for standing of 1,853 class members); *Gonzales v. Comcast Corp.*, 2012 WL 10621, at *7 (E.D. Cal. Jan. 3, 2012), *adopted by* 2012 WL 217708 (Jan. 23, 2012) ("Putative class members need not submit evidence of personal standing. . . .").  But "a class must be defined in such a way that anyone within it would have standing." *Gonzales*, 2012 WL 10621, at *7 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

**B.    Standing for Plaintiff Viernes**

   ***1.    Being Subjected to an Unlawful Lawsuit***

      *a.    Injury in Fact (Concrete Harm)*

         i.    Close-relationship test

Viernes alleges that he suffered a concrete harm constituting an injury in fact because he was "subject[ed] to an unlawful lawsuit."  ECF No. 129 at PageID # 1686; *see also* ECF No. 1 at PageID # 8 (alleging that "Defendant's actions," i.e., the "collection lawsuit," damaged Viernes).  That intangible harm is "a harm that has been repeatedly recognized in the common law," according to

14

Viernes.  ECF No. 129 at PageID # 1678.  More specifically, Viernes contends that the harm of being subjected to an unlawful lawsuit bears a close relationship to other harms traditionally serving as the basis for lawsuits in American courts, namely, harms actionable under the "common-law unjustifiable-litigation torts." *Id.* at PageID # 1686.  Examples include "wrongful use of civil proceedings" and "maintenance[] and champerty," according to Viernes.  *Id.* at PageID ## 1686–91.

DNF disagrees, arguing that the "unjustifiable-litigation torts" are "nothing like the claim[s] at issue" in this case.  ECF No. 130 at PageID ## 1714–15.  Those torts entail a "meritless claim pursued with evil intent," according to DNF.  *See id.* at PageID ## 1714–16.  And the facts of this case bear no resemblance to either of those elements, DNF argues, because the collection lawsuit clearly had merit given Viernes's admission of owing the underlying debt, and because there is no allegation that DNF filed the lawsuit with malice or evil intent.  *See id.*  Moreover, DNF emphasizes that "[t]he only impropriety apparent in the [collection] lawsuit was that DNF did not obtain a license prior to proceeding—a *procedural flaw* that had no bearing on the merits of the claims asserted."  *Id.* at PageID # 1716 (emphasis added).

The court agrees with Viernes that being subjected to an unlawful lawsuit bears a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.  *See TransUnion*, 141 S. Ct. at 2208–10.

Specifically, Viernes's asserted harm bears a close relationship to the harms

associated with the tort of "wrongful use of civil proceedings," *see* Restatement

(Second) of Torts § 674 (Am. L. Inst. 1977).  That well-recognized tort, which is

sometimes simply called "wrongful civil proceedings," is defined as follows:

> One who [(1)] takes an active part in the initiation,
> continuation or procurement of civil proceedings against
> another is subject to liability to the other for wrongful
> civil proceedings if [(2)] he acts without probable cause,
> and [(3)] primarily for a purpose other than that of
> securing the proper adjudication of the claim in which the
> proceedings are based, and [(4)] except when they are ex
> parte, the proceedings have terminated in favor of the
> person against whom they are brought.

*Silver v. Mendel*, 894 F.2d 598, 604 n.9 (3d Cir. 1990) (quoting Restatement

(Second) of Torts § 674); *see also Hernon v. Revere Copper & Brass, Inc.*, 494

F.2d 705, 706 (8th Cir. 1974) (quoting similar elements from the first Restatement

of Torts).  "Wrongful use of civil proceedings" finds its origins in the English

common-law doctrines of champerty and maintenance.  *See Sec. Underground*

*Storage, Inc. v. Anderson*, 347 F.2d 964, 969 (10th Cir. 1965).  And the majority of

jurisdictions recognize the tort of wrongful civil proceedings.  *See* W. Page Keeton

et al., *Prosser and Keeton on the Law of Torts* § 889 (5th ed. 1984); Restatement

(Second) of Torts § 674, Reporter's Note ("Although the general principle in this

Section was a minority rule at one time, it is now a clear and growing majority rule

followed by some 30 states.")

16

There is a close relationship between being subjected to an unlawful lawsuit and the four elements of wrongful civil proceedings listed above. For the first element, it is undisputed that DNF initiated the collection lawsuit. And for the second, DNF lacked probable cause to bring the lawsuit because the lawsuit was prohibited by statute. To be sure, if the court were actually resolving a claim of wrongful civil proceedings, it would likely reserve the issue of probable cause for the jury, as there are disputed facts concerning DNF's coverage under HRS § 443B-3. *See Hernon*, 494 F.2d at 707 ("Probable cause is a question of law for the court where there is no dispute in the facts of the case."). But the court can resolve factual disputes when analyzing standing, *see Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014), and especially when merely analogizing to traditional common-law rights, not actually deciding such rights.

In that regard, the court maintains its prior holding at the summary-judgment stage that "it appears that DNF is a collection agency under Hawaii law." ECF No. 70 at PageID # 619 n.3. Further, DNF does not dispute that it was unregistered when it filed the lawsuit in Hawaii state court, *see* ECF No. 63-2 at PageID # 361, ¶ 6, and it does not dispute that the lawsuit was for the purpose of collecting a debt, *see* ECF No. 70 at PageID # 612. With those facts, the court holds, for the purposes of this Order, that DNF's collection lawsuit was illegal under HRS § 443B-3(a).

DNF argues that probable cause existed because the collection lawsuit had merit (given Viernes's admission of owing the underlying debt) and because DNF's noncompliance with § 443B-3 was merely a "procedural flaw." *See* ECF No. 130 at PageID ## 1715–16.  Those arguments are non sequiturs.  For a wrongful-civil-proceedings claim, probable cause requires a factual basis and a legal basis:  There must be a reasonable belief that under the relevant facts, the claim asserted "may be held legally valid upon adjudication."  Restatement (Second) of Torts § 675.  DNF lacked probable cause because it was prohibited by statute from bringing the collection lawsuit, regardless of whether the claims in that lawsuit had factual merit, i.e., whether Viernes owed a debt to DNF.  *See Int'l Aerobatics Club Chapter 1 v. City of Morris*, 76 F. Supp. 3d 767, 781–83, 787–88 (N.D. Ill. 2014) (denying motion to dismiss against plaintiff's malicious prosecution claim, which also requires a lack of probable cause, because plaintiff alleged he was "*legally* innocent of the [aeronautical-activity] charge," despite "not denying the in-flight conduct for which he was ticketed," on the basis that his conduct could not be unlawful because the local laws enforced against him were preempted by federal-aviation laws); *see also Smith v. Holtz*, 87 F.3d 108, 113 (3d Cir. 1996) (holding that actual innocence is not required for malicious prosecution claims, and that a procedural dismissal on double-jeopardy grounds is sufficient for

the favorable-termination element), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Regarding the third element—improper purpose—DNF contends that element is not satisfied by analogy, because there is no allegation that it brought the collection lawsuit with malice or evil intent.  *See* ECF No. 130 at PageID ## 1715–16.  But the improper-purpose element does not require "malice" or "evil intent," but rather it requires that the lawsuit have been brought "primarily for a purpose other than that of securing the proper adjudication of the claim." Restatement (Second) of Torts § 676.  That element is satisfied here because DNF certainly knew it was not registered as a debt collector in the State of Hawaii when the collection lawsuit was filed on its behalf, *see* ECF No. 70 at PageID ## 616–18, and such knowledge supports a fair inference that DNF initiated the collection action in hopes of Viernes voluntarily paying the debt before recognizing the lawsuit's "procedural flaw."  *See Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987) ("Because few unsophisticated consumers would be aware that a [legal bar] could be used to defend against lawsuits based on [certain] debts, such consumers would unwittingly acquiesce to such lawsuits.  And, even if the consumer realizes that she can use [a] time [bar] as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to

present the defense; this is particularly true in light of the costs of attorneys today.").

In other words, the court finds it probable that DNF initiated the collection lawsuit knowing that it could not obtain a "proper adjudication" given its unregistered status and HRS § 443B-3(a). That possibility brings Viernes's harm sufficiently close to the harms associated with the tort of wrongful civil proceedings, even if it is possible that DNF instead believed it did not need to be registered and that the lawsuit was proper under § 443B-3(a). *See TransUnion*, 141 S. Ct. at 2209 (concluding there was a "sufficiently close relationship" between the tort of defamation and defendants' disseminating information that was not "technically false," and noting that the close-relationship test does not require "an exact duplicate"); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 350–51 (3d Cir. 2017) (holding that a "close relationship existed even though the conduct alleged would not have give[n] rise to a cause of action under common law" (citation and internal quotation marks omitted)).

Regarding the fourth and final element—favorable termination—the court simply finds that element ill-suited for analogy, considering the three purposes behind that element. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) ("One of the unexpected consequences of the common-law-analogy approach to identifying harms is the growing insistence on

hammering square causes of action into round torts."). The first purpose of the favorable-termination element is to define when the wrongful-civil-proceedings claim arose for purposes of the statute of limitations. Dobbs et al., *The Law of Torts* § 592 (2d ed., June 2021 update). But the comparable limitations periods for Viernes's claims—alleged violations of the FDCPA, Hawaii's UDAP, and Hawaii's collection-agency statute—have already begun. *See, e.g.*, *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (holding that the FDCPA's limitations period started at filing of a civil complaint that allegedly violated the Act).

The second purpose is to ensure that a wrongful-civil-proceedings claim is not being brought as a counterclaim in the suit containing the allegedly wrongful civil claim. Dobbs et al., *supra*, § 592 (citing *Bismarck Hotel Co. v. Sutherland*, 175 Ill. App. 3d 739, 748, 529 N.E.2d 1091, 1097–98 (1988)). That concern is irrelevant, too, because Viernes is not asserting his claims as counterclaims against a debt-collection claim.

The third purpose behind the favorable-termination element is to prevent parallel litigation over the same subject matter, a purpose grounded in the aversion to collateral attacks on judgments through civil-tort vehicles. *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (considering the purposes behind the favorable-termination element of malicious prosecution). Here,

although the collection lawsuit is still pending,[2] the claims in this case are not improper collateral challenges to a parallel proceeding.  When DNF filed its collection lawsuit, Viernes had the option to immediately file a separate lawsuit asserting claims concerning DNF's debt-collection practices—such as this case— or to litigate the collection lawsuit, possibly to dismissal, and later assert claims concerning DNF's debt-collection practices.  *See Page v. Forster & Garbus, LLP*, 2019 WL 5696108, at *3 (E.D.N.Y. June 17, 2019) (rejecting defendants' request to dismiss under an abstention doctrine because the asserted FDCPA claims "concern[] defendants' debt-collection methods, while the [pending] state-court collection actions involve the validity of the underlying debts" (alterations and citation omitted)); *see also Naas*, 130 F.3d at 893 (holding that the FDCPA's limitations period began at filing of the collection action).  In other words, the law views as permissible simultaneous litigation concerning a debt and the legality of the practices used to collect that debt.

All three purposes behind the favorable-termination element are analogically irrelevant to the facts of this case.  Analyzing the elements of a wrongful-civil-proceedings claim thus reveals that the harms associated with that

---

[2] As of January 27, 2022, the collection lawsuit is listed as "ACTIVE," according to Hawaii's eCourt Kokua docketing system.  *See DNF Assocs., LLC v. Viernes*, District Court of the First District (Honolulu Div.), Civ. No. 1RC19-1-316, filed Jan. 10, 2019.  There have been only three events in the collection lawsuit: the filing of the complaint on January 10, 2019, a return of service on January 17, 2019, and an entry of default on January 28, 2019.  *See id.*

tort bear a close relationship with the harm of being subjected to an unlawful lawsuit. The element analysis comports with the court's more general observation that subjecting someone to an unlawful lawsuit bears a strong resemblance to the core of the wrongful-civil-proceedings tort—suing someone without probable cause and for an improper purpose. *See Muransky*, 979 F.3d at 931 ("Litigants and courts alike can be drawn into overthinking what was really a simple instruction: see if a new harm is similar to an old harm."). Being subjected to an unlawful lawsuit is a concrete harm.

        ii.       General principles and pre-*TransUnion* case law

Stepping back from the close-relationship test, the court finds ample support for its conclusion that being subjected to an unlawful lawsuit is a concrete harm. Being sued is a serious matter with potentially serious negative consequences. *See Whelan v. Abell*, 953 F.2d 663, 673 (D.C. Cir. 1992). There are the obvious monetary harms associated with a litigation defense. And there are also reputational harms incurred by having one's "dirty laundry" aired in public. *See id.*; *Kimber*, 668 F. Supp. at 1487. Being publicly labeled as a debtor is no exception—debt-collection laws seek to prevent such reputational harm when they can be avoided. *See, e.g.*, *Gardner v. Credit Mgmt. LP*, 140 F. Supp. 3d 317, 321 (S.D.N.Y. 2015) ("The [FDCPA's] particular concern that information not be shared with 'friends, neighbors, or an employer' suggests that the specific abuse to

be remedied was that of collection agencies' targeted disclosures of a recipient's indebtedness as a means of harassment and embarrassment.  To that end, the Act seeks to prevent the personally damaging consequences that could flow from being identified as a debtor to those close to the recipient.").

Congressional intent has been the basis for many post-*Spokeo*, pre-*TransUnion* decisions that treat violations of the FDCPA as de facto concrete injuries.[3]  *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016) ("The invasion of [plaintiff's] right to receive the disclosures is not hypothetical or uncertain; [plaintiff] did not receive information to which she alleges she was entitled. . . .  [T]his injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA."  (citations omitted));

---

[3] The Ninth Circuit's pre-*TransUnion* decision in *Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020), states that when "a statutory provision identifies a *substantive* right that is infringed any time it is violated, a plaintiff bringing a claim under that provision 'need not allege any further harm to have standing.'"  *Id.* at 1117 (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th Cir. 2017)); *see also Lujan*, 504 U.S. at 578 ("Nothing in this contradicts the principle that '[t]he . . . injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'"  (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975))).  More directly, courts have held that a legislature's intent to create a substantive right is very indicative of Article III standing.  It is not yet clear how such holdings are affected by the Supreme Court's very recent decision in *TransUnion*.  *See Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 n.2 (2d Cir. 2021) ("The violation of a substantive right, [our prior] opinion explained, constitutes a concrete injury in fact sufficient to establish Article III standing without any additional showing.  *TransUnion* clarified, however, that the type of harm that a statute protects against is of little (or no) import; what matters is [the close-relationship test]. . . .  In other words, plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural."  (citations omitted)).  Nevertheless, the court need not decide the full reach of *TransUnion*, considering the dual-pronged analysis provided in this Order.  *See supra* Parts IV.B.1.a.i–ii.

*Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 4765839, at *7 (W.D. Wash. Sept. 13, 2016) ("Since *Spokeo*, the Eleventh Circuit and multiple district courts have considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they have answered that question in the affirmative." (collecting cases)); *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945, 959 (S.D. Iowa 2016) ("Congress plainly intended to elevate violations of the FDCPA 'to the status of legally cognizable injuries.' *Lujan*, 504 U.S. at 578."); *but see Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1000 (11th Cir. 2020) ("In sum, the FDCPA's narrow findings and cause of action . . . suggest no congressional judgment firm enough to break with centuries of tradition indicating that misrepresentations are not actionable absent reliance and ensuing damages.").

More importantly, there are post-*Spokeo*, pre-*TransUnion* decisions supporting the view that being subjected to a legally improper lawsuit is a concrete harm, regardless of whether the lawsuit has factual merit. *See, e.g.*, *Mayfield v. Portfolio Recovery Assocs., LLC*, 2021 WL 3492149, at *3 (D. Minn. Aug. 9, 2021) ("[Plaintiff] alleges that by filing its summons, [defendant] threatened to obtain a (legally invalid) default judgment against her based on its defective summons.  As the Court explains below, . . . the summons constitutes a 'threat to take an[ ] action that cannot legally be taken.' . . .  The threat to obtain an invalid default judgment caused a concrete, particularized injury to [plaintiff]." (quoting

the FDCPA, 15 U.S.C. § 1692e(5)));[4] *Gibbons v. Weltman, Weinberg & Reis Co., LPA*, 2020 WL 5039316, at *7 (E.D. Pa. Aug. 26, 2020) ("Defendant's assertion here that Plaintiff's 'fear' of being sued is insufficient to confer standing is without merit. . . . The alleged misrepresentation that an attorney was meaningfully involved in the debt collection or meaningfully reviewed Plaintiff's account is precisely the harm that [15 U.S.C.] section 1692e was intended to prevent." (citation omitted)).

And there are, of course, post-*Spokeo*, pre-*TransUnion* decisions supporting the proposition that being subjected to a meritless lawsuit is a concrete harm. *See, e.g.*, *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692 (8th Cir. 2017) ("The harm of being subjected to baseless legal claims, creating the risk of mental distress, provides the basis for both [15 U.S.C.] § 1692f(1) claims and the common-law unjustifiable-litigation torts."); *Sliwa v. Bright House Networks, LLC*, 2018 WL 1531913, at *4 (M.D. Fla. Mar. 29, 2018) ("[Defendant's] 'concrete and particularized' First Amendment injury is the fact that it is being sued and may be required to pay a money judgment for violating a statute that itself violates the First Amendment.").

---

[4] *Mayfield* was issued shortly after *TransUnion* but does not rely on or cite to *TransUnion*. *See* 2021 WL 3492149.

Against this backdrop, DNF relies on a 2008 decision from the Supreme Court of Hawaii when arguing that being subjected to an unlawful debt-collection action is not a concrete harm: *Flores v. Rawlings Co., LLC*, 117 Haw. 153, 177 P.3d 341 (2008). *See* ECF No. 130 at PageID # 1717; ECF No. 124-1 at PageID # 1600. But *Flores* is factually distinguishable because the collection action in that case was a collection letter, not a collection lawsuit, and thus the court in *Flores* did not consider the potential negative consequences and reputational damage associated with a public proceeding. *See* 117 Haw. at 156, 166, 177 P.3d at 344, 354. Moreover, *Flores* does not concern Article III standing, nor the line between concrete and abstract harms. Rather, *Flores* concerns a statutory requirement that a plaintiff have suffered an "injury," i.e., "private damage," to recover money damages or receive injunctive relief under Hawaii's UDAP statute. *See* 117 Haw. at 167–70, 177 P.3d at 355–58. The Supreme Court of Hawaii's views on that statutory requirement are not persuasive of—much less binding upon—this court's interpretation of Article III standing. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977). Hence, *Flores* does not alter this court's holding that being subjected to an unlawful lawsuit is a concrete harm. Viernes has demonstrated an injury in fact.

   *b.*  *Causation*

  Causation is plainly satisfied—Viernes's harm of being subjected to

an unlawful lawsuit is directly traceable to the challenged conduct, DNF's filing a

collection lawsuit in contravention of HRS § 443B-3(a) and allegedly violating the

FDCPA, Hawaii's UDAP, and Hawaii's collection-agency statute.

   *c.*  *Redressability*

  Neither Viernes nor DNF make arguments concerning the third

element of standing, redressability.  Nevertheless, the court must assure itself of

jurisdiction by analyzing that element.  There is no dispute that damages are

available under the FDCPA (*see* 15 U.S.C. § 1692k), Hawaii's UDAP (*see* HRS

§ 480-13), and Hawaii's collection-agency statute, HRS § 443B-18 (*see* HRS

§ 443B-20, making a violation of that statute a violation of Hawaii's UDAP and,

consequently, compensable under § 480-13).  Both 15 U.S.C. § 1692k(a) and HRS

§ 480-13(b) provide for actual damages.  And § 1692k(a)(2)(A) provides for court-

allowed "additional damages" "not exceeding $1,000," while § 480-13(b)(1)

provides for statutory damages of "a sum not less than $1,000 or threefold

damages by the plaintiff sustained, whichever sum is the greater."  All of the

asserted claims, therefore, appear redressable by compensatory damages.  *See*

*Resnick*, 693 F.3d at 1324; *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F.

Supp. 3d 1177, 1195 (S.D. Fla. 2020) (explaining how compensatory damages satisfy the redressability requirement).

The remaining question is whether *Flores* forecloses relief for Viernes's claims under Hawaii's UDAP and Hawaii's collection-agency statute. As explained above, *see supra* Part IV.B.1.a, *Flores* concerns a statutory requirement that a party asserting a UDAP claim have suffered an "injury," i.e., "private damage," 117 Haw. at 167, 177 P.3d at 355. If an unregistered firm violates HRS § 443B–3(a) by merely collecting a debt that is owed, the debtor has not incurred an "injury" under HRS § 480-13(b) and cannot receive relief under the UDAP. *See Flores*, 117 Haw. at 167–71, 177 P.3d at 355–59.

But *Flores* is distinguishable in an obvious way: Viernes's being subjected to an unlawful lawsuit also resulted in tangible monetary harm beyond the payment of an undisputed debt. *See infra* Part IV.B.2 (discussing postage fees as a monetary harm). While the court separates its analysis of those two harms for prudential reasons, those harms are tied together for the purposes of HRS § 480-13, and together they support recovery under § 480-13(b). Put differently, the more general harm of being subjected to an unlawful lawsuit could be relieved by awarding damages that are tied to the more specific sub-harms of paying attorneys fees, expending resources in responding to the lawsuit, and even suffering emotional distress because of the lawsuit. And here, Viernes expended resources

in responding to the collection lawsuit—he paid postage fees when sending letters disputing the debt and seeking verification of the facts underlying the debt.  That harm is an "injur[y]" under HRS § 480-13(b), *see Wiginton v. Pac. Credit Corp.*, 2 Haw. App. 435, 444, 634 P.2d 111, 118 (1981), enabling relief for Viernes's claims under Hawaii law and thus establishing redressability.

Furthermore, DNF's collection lawsuit is still pending and a judgment in favor of Viernes in this case could include an injunction against DNF's collection lawsuit.  *See* HRS § 480-13(b)(2) (permitting injunctions against violations of § 480-2).  Such an injunction would also redress the harm of being subjected to an unlawful lawsuit.  *See Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000) ("A plaintiff who seeks injunctive relief satisfies the requirement of redressability by alleging a continuing violation.").

In sum, Viernes has demonstrated that he suffered an injury in fact fairly traceable to DNF's conduct and that is likely to be redressed by a favorable decision.  Viernes has, therefore, met his burden to demonstrate standing.  That holding applies to all of Viernes's claims and requested relief because the harm of being subjected to an unlawful lawsuit underpins all those claims and requested relief.

### 2.   *Paying Postage Costs in Response to the Unlawful Lawsuit*

#### a.   *Injury in Fact (Concrete Harm)*

Viernes also asserts that he suffered a concrete harm constituting an injury in fact by having to "pa[y] $13.70 for postage when he sent [dispute] letters to [DNF] and its retained law firm" in response to DNF's collection lawsuit.  ECF No. 129 at PageID # 1692; *see also* ECF No. 1 at PageID # 8 ("Mr. Viernes has suffered actual damages in postage . . . .").  "This amount, however small, is sufficient to confer standing," Viernes argues.  ECF No. 129 at PageID # 1692.

The court agrees that having to pay $13.70 in postage fees is a concrete harm.  Monetary harm is an obvious example of a concrete harm. *TransUnion*, 141 S. Ct. at 2204.  And the "loss of even a small amount of money," i.e., $13.70, "is ordinarily an 'injury'" for purposes of Article III.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017).  The court finds that Viernes suffered an injury in fact by having to pay postage costs when responding to DNF's collection lawsuit.

#### b.   *Causation*

DNF's primary challenge to the postage-cost harm is that it is not "traceable to DNF's failure to obtain a license in Hawaii."  ECF No. 124-1 at PageID # 1604.  DNF argues that "the postage costs were incurred to comply with the dispute requirement articulated by Congress in the FDCPA, not because of any

conduct taken by DNF.  Put plainly, the postage costs [Viernes] incurred to dispute and verify his debt are traceable to the requirements to do so under the FDCPA, not DNF's failure to obtain a license."  *Id.* at PageID ## 1605–06.  The decision in "*Sambor v. Omnia Credit Services, Inc.*, 183 F. Supp. 2d 1234 [(D. Haw. 2002),] is instructive in that regard," DNF argues.  ECF No. 124-1 at PageID ## 1603–04.

There is, however, a clear causal connection between Viernes's postage-cost harm and DNF's unlawful collection lawsuit.  Viernes's dispute letters list the docket number for the collection lawsuit and declare that he "dispute[s] [that he] owe[s] this debt."  ECF No. 124-4 at PageID ## 1643, 1648.  Further, the court is not persuaded by DNF's argument that the FDCPA's verification procedures were essentially a superseding cause of the postage costs.  *See* ECF No. 130 at PageID # 1724 (citing 15 U.S.C. § 1692g(b)).  As DNF admitted at the December 22, 2021 hearing, Viernes was not required to submit a dispute letter (prompting verification) in response to DNF's collection lawsuit.  *See* 57A Am. Jur. 2d *Negligence* § 575 ("[A] superseding cause . . . must be a new and independent force or cause, and not merely a concurrent and contributing cause of the injury. . . .  [T]he intervening act must have actively worked to bring about a result which would not otherwise have followed from the original negligence, and the intervening cause must be adequate or sufficient of itself to bring about the injurious result . . . ."  (footnotes omitted)).  A contributing cause is insufficient to

sever the causal connection between Viernes's postage costs and DNF's collection

suit.  *See Mendia v. Garcia*, 768 F.3d 1009, 1013, 1015 (9th Cir. 2014) (holding

that causation for purposes of standing can been established if the unlawful action

"was at least a substantial factor" in causing the injury, implying that causation

may exist even if multiple substantial factors cause an injury, which in turn implies

that a mere contributing cause does not undermine causation for purposes of

standing); *see also Warth*, 422 U.S. at 504 ("The fact that the harm to petitioners

may have resulted indirectly does not in itself preclude standing.").

The court is also unpersuaded by DNF's argument that its unlawful

conduct was not a but-for cause of the postage costs, because, hypothetically

speaking, if DNF would have been properly registered, it still would have

attempted to collect the debt, prompting Viernes to pay the same postage costs to

dispute the debt.  That hypothetical flips the wrong fact in the but-for-causation

test.  The fact to be flipped is the unlawful conduct, which DNF admits is

Viernes's "being subject to a lawsuit, not DNF's lack of a license," ECF No. 130 at

PageID # 1719.  Put differently, there would be no unlawful conduct in this case if

DNF were merely an unregistered entity—it is DNF's *filing a collection lawsuit*

while being unregistered that is unlawful.  And there is a plain causal connection

between DNF's filing the collection lawsuit and Viernes's postage costs.[5]

Finally, DNF's reliance on *Sambor* is misplaced.  In *Sambor*, the

defendant sent a debt-collection letter without being registered as a collection

agency in the State of Hawaii, as required by HRS § 443B-3(a).  183 F. Supp. 2d at

1236, 1244.  The plaintiff filed a Hawaii UDAP claim on that basis and requested

damages under HRS § 480-13 for postage fees incurred in responding to the

collection letter.  *See Sambor*, 183 F. Supp. 2d at 1236, 1241.  The court held, as

DNF contends, that the plaintiff was not entitled to recover the postage fees,

because she had not established causation.  *See id.* at 1245.

DNF fails, however, to recognize the reasoning behind the court's

holding in *Sambor*:  Causation was lacking because the plaintiff might have

incurred the postage cost in preparing to file the suit before the court, not in

responding to the unlawful collection letter.  Specifically, causation was lacking

because "someone may have told her to check into whether [the defendant] was

---

[5] In terms of the but-for-causation test, the more appropriate question is whether Viernes would have incurred postage costs if DNF had not filed its collection lawsuit while unregistered. It is possible that if DNF had not filed suit, it never would have attempted to collect the debt, and Viernes would not have disputed the debt.  It is also possible DNF would have attempted to collect the debt outside of the judicial process, and that Viernes would have incurred the same postage costs in response.  That possibility does not, however, undermine causation for purposes of constitutional standing—strict but-for causation is not required.  *See Khodara*, 376 F.3d at 195; *Save Our Heritage*, 269 F.3d at 56 ("Petitioners asserting standing are not required to negate every possibility that the outcome might be the same under highly unusual circumstances."); *Desert Citizens*, 231 F.3d at 1179.

registered for the purpose of possibly suing [the defendant].  Expenses so incurred, even if they give rise to recoverable fees or costs, [were] not necessarily 'damages' flowing from the failure to register." *Id.*; *see also id.* at 1241.  But here, Viernes did not incur the postage costs when preparing to file the instant suit.  DNF does not make such an argument, nor would the evidence support it.  For that reason alone, *Sambor* is distinguishable.

To be sure, *Sambor* also reasoned—apparently as an alternative theory, or possibly in dictum—that "[c]onceivably, [the plaintiff] could have incurred these expenses even if [the defendant] had been registered" because the plaintiff needed to "comply with the statutory requirement of a writing to trigger [the defendant's] verification obligation." *Id.* at 1241, 1245.  DNF points to that language when arguing that the FDCPA's verification procedures were a superseding cause of Viernes's postage costs.  But, again, the verification procedures were not a superseding cause, because—as DNF admitted at hearing— they did not require Viernes to dispute or verify the debt alleged in DNF's collection lawsuit.  The court need not determine whether sending a dispute letter is legally required under the facts of *Sambor*, wherein the plaintiff sent her letter in response to a *collection letter*, not a collection lawsuit.

In short, there is a line of causation between DNF's unlawful collection lawsuit and Viernes's incurring postage costs.  That line is not too

attenuated, is not interrupted by a superseding cause, and represents a causal

connection sufficient for standing, despite the possibility that the injury might have

occurred under a different set of hypothetical facts.  Viernes's incurring postage

costs is, therefore, fairly traceable to DNF's unlawful collection lawsuit.

    c.    *Redressability*

DNF questions the redressability of the postage-cost harm with

respect to Viernes's FDCPA claim:  28 U.S.C. § 1920 limits the costs taxable by a

court in an FDCPA action.  ECF No. 124-1 at PageID # 1603.  And because

postage is not listed within § 1920, postage costs are not a recoverable cost for an

FDCPA claim, undermining the redressability of Viernes's harm.  *See* ECF No.

124-1 at PageID # 1603; ECF No. 130 at PageID # 1723.

The court disagrees.  Section 1920 concerns "[t]axation of costs," i.e.,

taxable costs.  Taxable costs are "expenses that a federal court may tax as costs

against the losing party" in a lawsuit in federal court.  *Crawford Fitting Co. v. J. T.

Gibbons, Inc.*, 482 U.S. 437, 440 (1987); *accord Taniguchi v. Kan Pac. Saipan,

Ltd.*, 566 U.S. 560, 562 (2012) ("The costs that may be awarded to prevailing

parties in lawsuits brought in federal court are set forth in 28 U.S.C. § 1920.").

Hence, those taxable "costs" are expenses incurred to facilitate consideration of the

very case in which the costs are being requested.  *See In re Peterson*, 253 U.S. 300,

317 (1920) ("As there is no statute, federal or state, and no rule of court excluding

auditors' fees and the expense of his stenographer from the items taxable as costs, no reason appears why they may not be included, like other expenditures ordered by the court *with a view to securing an intelligent consideration of a case*." (emphasis added)); Mary Jo Hudson, *Expert Witness Fees as Taxable Costs in Federal Courts—The Exceptions and the Rule*, 55 U. Cin. L. Rev. 1207, 1208 (1987) ("'Costs,' which are part of expenses, are those charges that one party incurs to facilitate consideration of the case."  "The procedure governing the taxation of costs is found within Rule 54(d), with six basic categories of taxable costs defined in 28 [U.S.C. § 1920].").

Section 1920's limitations on "taxable costs" do not, therefore, prevent Viernes from recovering damages for monetary harms caused by having to litigate a prior unlawful suit.  Such harms are more accurately viewed as "actual" "pecuniary" damages incurred ex ante, i.e., preceding the instant case, not costs incurred ad litem, i.e., during the instant case.  Because Viernes's recovery of postage costs is not limited by § 1920, and because the FDCPA permits awards of "actual damage[s]," 15 U.S.C. § 1692k(a)(1), Viernes's postage-cost harm is a redressable harm for purposes of the FDCPA claim.  The same can be said for the UDAP and collection-agency-statute claim.  *See* HRS § 480-13(b)(1) (permitting recovery of "damages sustained by the consumer").

In sum, Viernes has demonstrated that he suffered another injury in fact that is fairly traceable to DNF's conduct and likely redressable by a favorable decision.  Viernes has, therefore, met his burden in proving an injury in fact.  That holding applies to all of Viernes's claims and requested relief.

## C.      Standing for the Class Members

Viernes asserts that the Plaintiff Class Members have standing via the same injury in fact discussed above—being subjected to an unlawful lawsuit.  ECF No. 129 at PageID # 1678 ("Being unlawfully sued is itself a harm that has been repeatedly recognized in the common law.  It is also a harm that affects all class members equally and is subject to common proof."); *see also* ECF No. 1 at PageID ## 12–13 (requesting that any "damage sustained" by the Class Members from DNF's unlawful lawsuit be remedied).  DNF contends, of course, that the Class Members did not suffer injuries in fact by being subjected to collection lawsuits.

The court agrees with Viernes.  As set forth above, Viernes's being subjected to an unlawful lawsuit is a concrete harm fairly traceable to DNF's conduct and likely to be redressed by a favorable decision.  *See supra* Part IV.B.1.  That holding also applies to the Plaintiff Class Members, all of whom have been named in allegedly unlawful collection lawsuits filed on behalf of DNF.  *See* ECF No. 95 at PageID # 1333.  The classes are thus "defined in such a way that anyone

within [them] would have standing." *See Gonzales*, 2012 WL 10621, at *7 (citing *Wal-Mart*, 564 U.S. at 351).

The possibility that some of the Class Members might not have suffered actual, pecuniary damages is not fatal to the standing of the classes as a whole—there are still concrete, albeit intangible, harms providing standing for the Class Members. *See TransUnion*, 141 S. Ct. at 2208–09 (holding that 1,853 class members had standing by virtue of misleading credit reports being disseminated to third parties, and not asking whether those members suffered more specific sub-harms, such as being denied a loan or being offered a credit card on less-favorable terms); *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct.").

In sum, all of the Plaintiff Class Members have alleged an injury in fact fairly traceable to DNF's conduct and likely redressable by a favorable decision. The Class Members, therefore, have standing. That holding applies to all claims asserted on behalf of the Class Members. *See* 15 U.S.C. § 1692k(a)(2)(B) (permitting damages for class actions under the FDCPA); HRS § 480-13(c) (permitting damages for class actions under Hawaii's UDAP).

**D.     Decertification of the Classes**

Finally, DNF asserts that the classes should be decertified because "every member of the Class[es] must satisfy Article III standing in order to recover monetary damages in this case," and ensuring that requirement is met will "require an individual mini trial for each class member to determine whether each class member suffered a concrete injury." ECF No. 124-1 at PageID ## 1607, 1611. More specifically, DNF asserts that the class vehicle is inappropriate because "[t]here is simply no way to determine, through common evidence, whether each class member suffered a concrete injury traceable to DNF's conduct without questioning every class member," "defeating the very purpose of both the commonality and predominance requirements." *Id.* at PageID ## 1610–11.

The court disagrees. Although DNF correctly points out that every Class Member must have Article III standing, DNF incorrectly extrapolates from that principle that the court should require something more than the concrete harm of being subjected to an unlawful lawsuit, i.e., the court should zoom in on that harm and find more specific sub-harms. But, again, there is no such requirement under Article III or class-action law. *See TransUnion*, 141 S. Ct. at 2208–09; *Ruiz Torres*, 835 F.3d at 1136. DNF is also wrong when arguing, more generally, that the individualized nature of actual damages in this class action (in contrast to a class action where all members have suffered roughly the same monetary harm)

40

undermines the class vehicle.  "[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Wal-Mart*, 564 U.S. at 362 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3)."); 2 William B. Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed., Dec. 2021 update) ("[T]he Advisory Committee that drafted Rule 23 stated that individual damage calculations should not scuttle class certification under Rule 23(b)(3), . . . .").  The court thus rejects DNF's request to decertify the classes.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, DNF's "Motion to Dismiss for Lack of Standing and to Decertify the Classes" is DENIED.  Because Viernes has standing to assert his claims under 15 U.S.C. § 1692e, HRS § 480-2, and HRS § 443B-18, those claims will proceed.  The Plaintiff Class Members have standing to assert those claims, too, and the classes remain certified.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 27, 2022.



   /s/ J. Michael Seabright    
J. Michael Seabright
Chief United States District Judge

*Viernes v. DNF Assocs., LLC*, Civ. No. 19-00316 JMS-KJM, Order Denying Defendant's "Motion to Dismiss for Lack of Standing and to Decertify the Classes," ECF No. 124